# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

SEAN ZEIGLER,

                     Petitioner,          :     Case No. 1:18-cv-580

    - vs -                               District Judge Michael R. Barrett
                                       Magistrate Judge Michael R. Merz

WARDEN,
 Lebanon Correctional Institution

                                  :
                Respondent.

# REPORT AND RECOMMENDATIONS

This is an action for a writ of habeas corpus, brought *pro se* by Petitioner Sean Zeigler to obtain relief from his 2015 convictions and sentence in the Hamilton County Court of Common Pleas (Petition, ECF No. 1). The State Court Record (ECF No. 5), the Return of Writ (ECF No. 6), and Petitioner's Traverse (ECF No. 15) were all filed prior to the stay.

In August 2019 District Judge Barrett stayed the case at Petitioner's request pending his exhaustion of state court remedies (ECF No. 17). After exhaustion and on Petitioner's Motion (ECF No. 18), Magistrate Judge Bowman reinstated the case to the active docket, ordered Respondent to answer Zeigler's fifth and sixth grounds for relief, and set a date for a supplemental traverse (ECF No. 20). Respondent then supplemented the State Court Record (ECF No. 23) and filed a Supplemental Return of Writ (ECF No. 24). Petitioner filed a Supplemental Reply July 15, 2022 (ECF No. 26), rendering the case ripe for decision.

1

The Magistrate Judge reference of the case has been transferred to the undersigned from Magistrate Judge Bowman to help balance the Magistrate Judge workload in the District (Order, ECF No. 28). Ultimate decision of the case remains with District Judge Barrett.

**Litigation History**

On February 3, 2015, the Hamilton County grand jury indicted Zeigler on six counts: aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(1) and (2)(counts one and two), vaginal rape and rape by fellatio in violation of Ohio Rev. Code § 2907.02(A)(2)(counts three and four), felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1)(c)(count five), and tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1)(count six). The aggravated burglary, rape, and felonious assault counts were accompanied by one-year and three-year firearm specifications pursuant to Ohio Rev. Code § 2941.141 and § 2941.145. (State Court Record ECF No. 5, Ex. 1).

A jury acquitted Zeigler on the second count of aggravated burglary and all of the firearm specifications, but it convicted him of the remaining charges. (State Court Record, ECF No. 5, Exs. 6-7). On April 14, 2016, the court sentenced Zeigler to eight years for aggravated burglary, ten years for each rape, seven years for felonious assault, and twenty-four months for tampering with evidence. The court ordered all counts to be served consecutively, resulting in an aggregate prison term of thirty-seven years. (State Court Record, ECF No. 5 Ex. 8).

Zeigler appealed, claiming error in the failure to merge the aggravated burglary and felonious assault convictions as allied offenses of similar import. The Ohio First District Court of Appeals affirmed the convictions. *State v. Zeigler*, 97 N.E. 3d 994 (Ohio App. 1st Dist. Sept. 20, 2017), and the Ohio Supreme Court denied leave to file a delayed appeal. 152 Ohio St. 3d 1461 (2018).

On November 17, 2017, Zeigler applied *pro se* to reopen his appeal pursuant to Ohio App. Rule 26(B), arguing that his appellate counsel was ineffective for not raising the following assignments of error:

> 1. The court committed reversible error by denying Appellant's motion to suppress DNA evidence because his consent was coerced and forced by statements made by officers which left him to believe that it would be pointless to refuse consent to search his person.
>
> 2. Appellant was denied a fair trial guaranteed to him under the 5th and 14th Amendment rights of the U.S. Constitution due to misconduct by the prosecutor and expert serology witness for the State who gave false testimony and the prosecutor relied on that false testimony during examination and closing arguments.
>
> 3. Trial counsel rendered ineffective assistance for failing to rebut forensic evidence of rape in allowing false testimony by the State's expert serologist that contradicted her lab report to go unquestioned and unchallenged violating the 6th amendment of the U.S. Constitution.

(State Court Record, ECF No. 5, Ex. 23). On February 14, 2018, the appellate court denied the application on the merits. (State Court Record, ECF No. 5, Ex. 24) and the Supreme Court declined jurisdiction over an appeal. *State v. Zeigler*; 152 Ohio St. 3d 1489 (2018).

Zeigler filed his habeas corpus petition in this Court August 2, 2018, pleading the following grounds for relief:

> **Ground One:** The trial court committed reversible error in denying petitioner's suppression of the DNA evidence because his consent was coerced rendering it involuntary because after he requested an attorney, the officers made forceful statements that left the petitioner to believe it would be fruitless to refuse consent which violated petitioner's Fourth, Fifth and Fourteenth Amendment rights.
>
> **Ground Two:** Petitioner was denied a fair trial when due process under the Fifth and Fourteenth Amendment were violated due to prosecutor and witness misconduct when the serologist gave false testimony about the source of the DNA in her report and the prosecutor relied on the false testimony during examination and closing arguments.

3

> **Ground Three:** Trial counsel render ineffective assistance violating petitioner's Sixth Amendment right for failing to rebut forensic evidence of rape in allowing false testimony by the serologist that contradicted her lab report to go unquestioned and unchallenged.
>
> **Ground Four:** Appellate counsel was ineffective violating petitioner's Sixth Amendment right for failing to raise winning issues in my direct appeal, but for appellate counsel's unreasonable and unjustifiable errors, the appeal would have resulted in a different outcome.

(Petition, ECF No. 1).

After filing here, Zeigler filed a Petition for Post-Conviction relief under Ohio Revised Code § 2953.21 raising ineffective assistance of trial counsel claims related to failure to investigate inmate correspondence with Ramon Lear (Petition, State Court Record ECF, No. 23, Ex. 32). He was unable to persuade the trial or appellate court that he met the jurisdictional criteria for consideration of a post-conviction petition filed beyond the one-year statute of limitations in Ohio Revised Code § 2953.23 and no Ohio court ruled on the merits of those claims (State Court Record, ECF No. 23, Exs. 37, 48).

In early 2019 while his state court proceedings were pending, Zeigler obtained leave to amend his habeas corpus Petition to add Grounds Five and Six:

> **Ground Five:** Trial counsel was ineffective which deprived appellant of his sixth amendment right when he failed to investigate and present evidence in the form of inmate-to-inmate correspondence letters sent to appellant from Ramon Lear for impeachment that proved that he and his girlfriend fabricated the charges against appellant to get Mr. Lear out of jail and ultimately proved appellants actual innocence and supported the theory of the defense.
>
> **Ground Six**: ineffective assistance of counsel
>
> **Supporting facts:** Trial counsel was ineffective when he failed in his duty to investigate witnesses who may have had information concerning his clients detention in the police station during the

4

> suppression hearing. Trial counsel's failure to conduct a prompt investigation of the circumstances of the case and explore avenues leading to relevant facts to the merit of the case, thereby causing prejudice to Zeigler, denying him due process of the law and a fair trial, a violation of the sixth amendment right to effective assistance of counsel.

(Motion, ECF No. 12).

# Analysis

## Ground One:  Denial of Suppression of Results of DNA Testing

In his First Ground for Relief, Zeigler claims he was denied his rights under the Fourth, Fifth, and Fourteenth Amendments when the trial court refused to suppress the results of DNA testing. Zeigler did not raise this claim on direct appeal, but instead raised a related claim as his first claim in his 26(B) Application, to wit, that it was ineffective assistance of appellate counsel to fail to raise this as a claim of trial court error.

The First District Court of Appeals held it was not ineffective assistance of appellate counsel to fail to plead this assignment of error on direct appeal because there was competent credible evidence supporting the trial court's conclusion that Zeigler's consent to the taking of the DNA sample was voluntary and not coerced (Opinion, State Court Record, ECF No. 5, PageID 179).

Although Zeigler mentions the Fifth Amendment in the text of his First Ground for Relief, the only evidence which he claims should have been suppressed is physical evidence from the DNA swabs taken from him and not any statements he may have made to the police.  Fifth Amendment analysis is applicable only to testimonial evidence, not physical evidence.  Likewise, the Fourteenth Amendment is only applicable to the extent that it incorporates the Fourth and Fifth

Amendments to be applicable to the States. See *Mapp v. Ohio*, 367 U.S. 643 (1961); *Malloy v. Hogan,* 378 U.S. 1 (1964) (privilege against self-incrimination). Accordingly, only Fourth Amendment analysis is applicable here.

Respondent asserts Ground One is not cognizable because federal habeas corpus relief is not available to prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell,* 428 U.S. 465 (1976), established that rule of law. *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of a procedural rule prevents state court consideration of merits. The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526.

Zeigler asserts *Stone* does not bar his claim because he did not receive a full and fair opportunity to litigate this claim in the state courts. He offers no quarrel with the process in the

trial court, but asserts the First District truncated the process when it would not allow him to file his Supplemental Brief on the suppression issue.

The record reflects that after his appointed appellate counsel filed a brief raising the allied offenses assignment of error quoted above, Zeigler moved on December 20, 2016, for leave to file a *pro se* supplemental brief (State Court Record, ECF No. 5, Ex. 12). No proposed supplemental brief is tendered. Zeigler says the reason for a supplement is that he and his appellate attorney disagreed about the issues to be presented, but he does not say what those issues are. He does not ask to have appellate counsel replaced nor does he seeks to exercise his authority under *Faretta v. California,* 422 U.S. 806 (1975), to represent himself on appeal.

A month later on January 23, 2017, Zeigler again moved for leave to file a supplemental brief (State Court Record, ECF No. 5, Ex. 14). Again he principally complains about lack of communication with counsel. He does not proffer a supplemental brief or suggests any issues he believes should be raised or make a *Faretta* claim.

The First District denied leave to file a supplemental brief on February 1, 2017. *Id.* at Ex. 15. Zeigler nevertheless filed a Supplemental Brief February 27, 2017. *Id.* at Ex. 16, PageID 76-91. On June 27, 2007, Zeigler filed a letter with the Clerk saying he had fired his appellate counsel in December, 2016. *Id.* at Ex. 17. However, no contemporaneous evidence of this firing is provided.

The First District decided the case on September 20, 2017. *State v. Zeigler,* 97 N.E. 3d 994 (Ohio App. 1st Dist. Sept. 20, 2017). It makes no comment on the Fourth Amendment issue Zeigler attempted to raise in his Supplemental Brief.[1] Zeigler did not timely appeal to the Supreme Court

---

[1] However, the First District does make extensive findings of fact of Zeigler's infliction of serious physical injury on the victim which completely undermine Zeigler's theory of the defense. Zeigler makes no effort to rebut those findings, but as Respondent reminds us, those factual findings are binding on this Court in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir.

of Ohio from denial of leave to file a supplemental brief.

Considering all these procedural facts together, the Court should conclude Zeigler had a full and fair opportunity to litigate his Fourth Amendment claim. The Sixth Circuit has found the Ohio trial court process adequate. *Riley, supra.* Zeigler's sole claim is that failure to allow the Supplemental Brief made the process unfair. But Ohio does not in any way discriminate against Fourth Amendment claims on direct appeal. In particular its bar on supplemental *pro se* briefs applies to all issues thus attempted to be raised, not just Fourth Amendment issues. As the First District's opinion on Zeigler's 26(B) Application clarifies, this Fourth Amendment issue could have been raised on direct appeal, but would not have changed the outcome because the standard of review on motions to suppress is whether there is competent credible evidence to support a trial court's decision. The First District held there was and Zeigler has not overcome the presumption of correctness of that finding either.

Because refusal to allow a *pro se* supplemental brief on a basis that did not discriminate against Fourth Amendment issues did not deprive Zeigler of a full and fair opportunity to litigate his Fourth Amendment claim, his First Ground for Relief should be dismissed under *Stone*.


**Ground Two: Prosecutorial and Witness Misconduct**


In his Second Ground for Relief, Zeigler claims he was denied due process of law because he was convicted on false testimony of the serologist regarding the source of the victim's DNA found on Zeigler. The due process violation is said to consist of the witness's false testimony in the first instance and the prosecutor's reliance on that testimony during examination and closing

---

1998). While not pertinent to the *Stone v. Powell* issue, the findings are pertinent to other issues in the case.

(Petition, ECF No. 1, PageID 7).

Respondent asserts this Ground for Relief is barred by Zeigler's procedural default in failing to raise it as an assignment of error on direct appeal. The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default

> doctrine thus advances the same comity, finality, and federalism
> interests advanced by the exhaustion doctrine. See *McCleskey v.
> Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims

that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020),

citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

Unlike Ground One, Zeigler did not attempt to obtain direct appeal review of this claim.

His first attempt to present it to the First District was in his 26(B) Application[2] as his second

omitted assignment of error (State Court Record, ECF No. 5, Ex. 23). The First District decided

this claim and his third omitted assignment of error together:

> Nor was appellate counsel ineffective in failing to submit the claims
> in his second and third proposed assignments of error, that his
> convictions were the product of perjured testimony by the state's
> serology expert, misconduct by the state in knowingly suborning
> and failing to correct that allegedly perjured testimony, and trial
> counsel's ineffectiveness in failing to cross-examine the expert with
> the findings set forth in the crime-laboratory report disclosed in
> discovery. The trial record discloses no inconsistency between the
> serology expert's testimony and the crime laboratory report.
>
> Because that testimony was not demonstrably false, Zeigler's
> perjury and prosecutorial misconduct claims fail in their underlying
> premises, see *Giglio v. United States*, 405 U.S. 150 (1972); *Napue
> v. Illinois*, 360 U.S. 264 (1959); and *State v. Iacona, 91*Ohio St.3d
> 83, 97, 752 N.E.2d 937 (2000), and the record cannot be said to
> demonstrate an outcome-determinative deficiency in trial counsel's
> performance with regard to the testimony the testimony. *Strickland
> [v. Washington,* 466 U.S. 668] 694, 104 S. Ct. 2052, 80 L. Ed. 2d
> 674 (1984); [*State v.] Bradley,* [42 Ohio St. 3d 136] at paragraph 3
> of the syllabus.

---

[2] Zeigler sometimes refers to this as his *Murnahan* application. In *State v. Murnahan*, 63 Ohio St. 3d 60 (1992), the Ohio Supreme Court held that claims of ineffective assistance of appellate counsel could not be adjudicated in petitions for post-conviction relief under Ohio Revised Code § 2953.21 which are heard in the first instance in trial courts. On recommendation of its Rules Advisory Committee, the court adopted App. R. 26 to have these claims heard first in the courts of appeals.

Opinion, State Court Record, ECF No. 5, Ex. 24, PageID 178.

The question of whether the testimony and the laboratory report are inconsistent is a question of fact on which the First District's opinion that they are consistent is entitled to a presumption of correctness unless proven wrong by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). But that is a question on the merits of Ground Two. Before reaching the merits, the Court must decide if Ground Two is procedurally defaulted.

Zeigler asserted he did not default Ground Two. In fact he claims "Zeigler raised all three grounds that respondent argues are procedurally defaulted fairly to the state courts under the same theory which gave the courts a fair chance to correct any and all errors Zeigler presented." (Reply, ECF No. 15, PageID 1407-08). But reliance on the same theory is not enough unless the claim is presented in the manner prescribed by state law.

As Zeigler reminds the Court, the Sixth Circuit requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

11

> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).   A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error.  *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a procedural rule that is applicable:  claims which can be decided on the appellate record must be raised on direct appeal or they are barred from later consideration by *res judicata*. *State v. Perry,* 10 Ohio St. 2d 175 (1967).  Zeigler's Ground Two could have been decided on the direct appeal record.  Zeigler conceded as much by pleading in his 26(B) Application that it was ineffective assistance of appellate counsel not to raise the claim there.

The Ohio courts have consistently enforced the rule.     *State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981).  The Court has no doubt that if Zeigler had attempted to raise this claim in a petition for post-conviction relief under Ohio Revised Code § 2953.21, the Ohio courts would have refused to entertain it because of the *Perry res judicata* rule.

The Sixth Circuit has repeatedly held Ohio's doctrine of *res judicata* in criminal cases, enunciated *Perry* is an adequate and independent state ground of decision.  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Once the analysis has reached this stage, a habeas petitioner must show excusing cause and

prejudice in order to overcome the procedural default.  Ineffective assistance of appellate counsel can act as excusing cause, *Murray v. Carrier,* 477 U.S. 478 (1986), but must first be presented to the state courts for adjudication.  *Edwards v. Carpenter*, 529 U.S. 446 (2000).  Zeigler has done that with his 26(B) Application, but received an adverse ruling on the merits of that claim.  This Court must defer to that ruling unless Zeigler shows it is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent (28 U.S.C. § 2254(d)(1)) or based on an objectively unreasonable determination of the facts (28 U.S.C. § 2254(d)(2)).  *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  As to the deficient performance prong of *Strickland*, it cannot be ineffective assistance of appellate counsel to fail to raise a claim which is without merit and the First District held there was no inconsistency between the serology report and the serologist's testimony.

In his 26(B) Application Zeigler argued this assignment of error as follows:

> In the crime lab report provided to the defense upon the demand for discovery by the Hamilton county prosecutor, Kelly Ashton-Hand who's an expert serologist indicated that on the genital swab marked as specimen 2, a component of saliva was identified matching Ms. Renders profile. When cross-examined, Ms. Ashton-Hand committed perjury by saying she didn't know if the DNA was from vaginal contact or oral contact. Specifically she said she couldn't identify saliva (T.P.741). She went on to say she didn't know where the profile came from but that it was present which misled the jury to believe it could be vaginal fluid or even blood or sweat.

> The prosecutor relied on the perjured testimony during redirect examination and closing arguments where he never corrected Ms. Ashton-Hand's false testimony. During redirect on (T.P.743) the prosecutor spoke on the DNA being from the vagina or mouth but never said anything to Ms. Ashton-Hand about what her lab report in fact said about saliva being identified which corroborated what appellant told his lawyer about receiving oral sex from Ms. Render and would have proved what counsel said he would prove in his opening statements. Instead on (T.P.876 and 910) he spoke on not

> knowing where the DNA came from which was a malicious act by
> Ms. Ashton-Hand and the prosecutor to mislead the jury and boost
> the states case.

(26(B) Application, State Court Record, ECF No. 5, PageID 140-41).

In her testimony the serologist testified that she found the victim's DNA profile in the sample recovered from Zeigler's genitals, but that she could not determine whether that profile came from oral contact or genital contact by Zeigler with the victim (Trial Tr., ECF No. 5-7, PageID 965). Zeigler claims this was perjury because it conflicted with the serology report produced in discovery, but he provides no record reference for that report. To overcome the First District's finding of no inconsistency, he must show by clear and convincing evidence in the State Court Record that that factual finding is in error. He has not done so.

Moreover, to show perjury, Zeigler must do much more than show inconsistency between two statements of the same witness. Rather, he must show that the witness knew that one of the statements was false and made the statement anyway under oath. Jurors are routinely instructed that such inconsistencies are not uncommon and to consider whether the inconsistency concerns an issue of importance to the case.

Because Zeigler has not produced clear and convincing evidence that the First District's finding of no inconsistency is in error, he has not shown that court's conclusion that it was not ineffective assistance of appellate counsel to fail to raise this second assignment of error on direct appeal was ineffective. Therefore that supposed instance of ineffective assistance of appellate counsel cannot excuse Zeigler's procedural default in failing to raise his third ground for relief on direct appeal. Ground Three should be dismissed as procedurally defaulted.

Zeigler argues that the Supreme Court has continued to recognized a "manifest miscarriage of justice" exception to procedural default (Reply, ECF No. 15, PageID 1411). He fails to

recognize that the manifest miscarriage of justice exception is limited to petitioners who have produced new evidence, not considered by the jury, that they are actually innocent of the crimes for which they were convicted. *Schlup v. Delo,* 513 U.S. 298, 316 (1995). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Zeigler has not satisfied the conditions of the actual innocence exception.

## Ground Three:  Ineffective Assistance of Trial Counsel in Failing to Expose Serologist's False Testimony

In his Third Ground for Relief Zeigler claims he suffered ineffective assistance of trial counsel in violation of the Sixth Amendment when his trial attorney did not expose the false testimony of the serologist (Petition, ECF No. 1, PageID 9). Respondent asserts this ground for relief is procedurally defaulted on the same basis as Ground Two and Zeigler responds that he raised the claim in his 26(B) Application, avoiding default. *Id.*

For the reasons given with respect to Ground Two, this argument is unavailing:  Under *State v. Perry, supra,* Ohio requires that claims of ineffective assistance of trial counsel which can be brought on direct appeal must be brought there; Zeigler acknowledged this claim could have been brought on direct appeal by including it in his 26(B) Application. However, the First District reasonably rejected the ineffective assistance of appellate counsel claim by finding no inconsistency between the serologist's report and her testimony, a conclusion Zeigler has not overcome by clear and convincing evidence. Because we must defer to this First District conclusion, Zeigler cannot rely on ineffective assistance of appellate counsel to excuse his

procedural default of Ground Three which should therefore be dismissed on that basis.

**Ground Four:  Ineffective Assistance of Appellate Counsel**

In his Fourth Ground for Relief, Zeigler claims he received ineffective assistance of appellate counsel in violation of his rights under the Sixth Amendment when his appellate attorney did not raise "winning issues" and forcing him to file his 26(B) Application (Petition, ECF No. 1, PageID 10).  He does not state in his Petition what those winning issues would have been, but he clearly intends the issues he actually raised in the 26(B)(See Petition, ECF No. 1, PageID 10). Thus Ground Four raises a free-standing ineffective assistance of appellate counsel claim as well as a claim that the three sub-claims excuse his procedural defaults on Grounds One, Two, and Three; he does not plead any other instances of ineffective assistance of appellate counsel.  As noted above, the First District decided the 26(B) on the merits and adversely to Zeigler.  He preserved those claims by appealing to the Supreme Court of Ohio, which declined jurisdiction.

This Report does not reach the merits of the first sub-claim of ineffective assistance of appellate counsel relating to the motion to suppress because of the *Stone v. Powell* bar.  The First District rejected all three sub-claims on the merits and that decision is entitled to deference unless Zeigler shows it is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent or based on an unreasonable determination of the facts.  Respondent allows that First District's decision on Ground Four to stand on its own without further argument (Return, ECF No. 6, PageID 1245).

The Sixth Amendment guarantees effective assistance of counsel on direct appeal as well as at trial.  *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v.*

16

*Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).  Counsel must be appointed on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353 (1963); *Anders v. California*, 386 U.S. 738 (1967);  *United States v. Cronic,* 466 U.S. 648 (1984).  The *Strickland* test applies to appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).  To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing  Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.*

In deciding Zeigler's 26(B) Application, the First District applied this law and Zeigler has not shown that its decision was either contrary to or an objectively unreasonable application of, in particular, *Strickland*.  While the three unraised assignments of error are arguably stronger than the one that was raised, there is no prejudice because the three omitted assignments are without merit.  Ground Four should be dismissed on the merits.

## Ground Five:  Ineffective Assistance of Trial Counsel:  Failure to Investigate

In his Fifth Ground for Relief, Zeigler claims he was deprived of the effective assistance of trial counsel when his trial attorney failed to investigate and present inmate-to-inmate correspondence from Ramon Lear.  When Zeigler moved to amend his Petition in this case, he did not attach copies of these letters from Lear, but described their collective content as showing "that there was a plot to have charges placed on Zeigler in order to help Lear get out of jail and they would have also cast sufficient doubt as to guilt had counsel presented those letters during trial."

17

(ECF No. 12, PageID 1371). Zeigler represents

> the letters … were written to Zeigler, by Ramon Lear, while they
> were both at the Hamilton County justice center. The letters were in
> reference to Zeigler's girlfriend dropping the felonious assault
> charges that were pending against Lear. Lear told Zeigler that his
> girlfriend, who placed false charges on Zeigler, would then drop the
> charges.

*Id.* The letters are attached to Zeigler's Motion for Appointment of Counsel in Post-Conviction

(Supp. State Court Record, ECF No. 23, PageID 1522, et seq.).

Zeigler filed his Petition for Post-Conviction Relief December 18, 2018 (Supp. State Court

Record, ECF No. 23, Ex. 32). In it he avers that the Lear letters were disclosed by him to his trial

attorney in April 2015 and by his trial attorney to the prosecution on October 19, 2015. *Id.* at

PageID 1463. However he claims he could not have brought this ineffective assistance of trial

counsel claim on direct appeal because it depended on the Lear letters and his trial attorney "had

just now [been] compelled to turn over the letters." *Id.* at PageID 1469. Recognizing that his post-

conviction petition was untimely, he moved twice for permission to file a delayed petition. *Id.* at

Exs. 33, 35.

The Hamilton County Court of Common Pleas held in summary fashion that Zeigler had

not met the conditions for filing a delayed petition under Ohio Revised Code § 2953.23. *Id.* at Ex.

37. Zeigler appealed. The First District's Opinion fleshes out the facts:

> Lear sent the letters while both men were confined in the Hamilton
> County Justice Center awaiting trial-Lear for shooting at Zeigler and
> Zeigler's girlfriend, and Zeigler for raping J.R. [Lear's girlfriend]
> three days later. Zeigler argued that trial counsel should have used
> the letters to impeach Lear because after the defense had put Lear
> on the stand at trial, he denied writing the letters. Zeigler also argued
> that the letters were exculpatory because Lear stated in the letters
> that he did not want to see Zeigler go to jail for something that did
> not happen and because of the "scheme" revealed in the letters: Lear
> proposed that Zeigler dissuade his girlfriend from testifying against
> Lear for shooting at Zeigler and Zeigler's girlfriend, and Zeigler for

18

raping J.R. three days later in exchange for J.R. telling law enforcement that she had fabricated the rape allegations against Zeigler to help Lear get out of jail.

(Opinion, Supp. State Court Record, ECF No. 23, Ex. 48, PageID 1631-32).

Because Zeigler had not shown the submitted evidence satisfied Ohio Revised Code § 2953.23, the First District affirmed dismissal on the basis of lack of jurisdiction. *Id.* at PageID 1694. Ohio courts lack subject matter jurisdiction to consider on the merits untimely post-conviction petitions which do not satisfy Ohio Revised Code § 2953.23 criteria. The First District gave Zeigler the benefit of the doubt on the first criterion – prevention from learning the relevant facts[3] – but it held the Lear letters did not show by clear and convincing evidence that but for a constitutional error no reasonable jury would have found him guilty.

Respondent asserts Ground Five is procedurally defaulted because it was not properly presented to the Ohio courts. Applying the *Maupin* analysis, the Court notes Ohio has a procedural rule requiring petitions for post-conviction relief to be filed within one year of completion of the transcript on direct appeal. Zeigler admittedly did not meet that deadline and the Ohio courts enforced it against him. The rule is an adequate and independent ground of state decision in that it reasonably enforces the State's interest in the finality of criminal convictions and is completely independent of the federal right sought to be enforced. Zeigler has not shown excusing cause and prejudice. Although he apparently did not have copies of the Lear letters to file with the post-conviction petition until December 2018, he knew their content more than three years earlier. And his claim of ineffective assistance of trial counsel in Ground Five is much broader than failure to present the Lear letters. He also claims at great length his trial attorney should have investigated

---

[3] Zeigler knew the contents of the Lear letters in April 2015 and that his lawyer had not used them at trial by the time of trial and could have filed a timely post-conviction alleging those facts. He did not obtain proof of the content of the letters until 2018. If he had filed a timely post-conviction petition, he could have used discovery practice to obtain those letters for an evidentiary hearing.

further what Lear had to say.  Zeigler certainly knew as of the end of trial that his trial attorney had not done further investigation.  He could have filed on that basis promptly after trial, although he presents no facts which would have been discovered by such investigation.

Most important, however, is the First District's discounting of the persuasiveness of the Lear letters.  Trial counsel had already taken a serious risk by putting Lear on the stand as a defense witness and then he denied writing the letters.  Zeigler assumes his counsel could have gotten Lear to change his testimony by confronting him with the letters, but he offers no suggestion about how that could have been done or how likely it was.  And the First District is clearly correct that standing alone they are not exculpatory.  Standing alone, they are an invitation to Zeigler to participate in a conspiracy to pervert the course of justice:  you get your woman to withdraw what she has told the police (and perhaps the grand jury under oath) or just not obey a trial subpoena and I'll get my woman to do the same thing and we'll both walk.

Lear's statement in the letters that he did not want his friend Ziegler to do time for something he didn't do also does nothing to explain the serious physical abuse the First District found Zeigler inflicted on J.R. including the forced ingestion of large doses of medication not prescribed for her and drinking a bottle of rubbing alcohol, abuse for which the State presented medical testimony.  Zeigler has offered no "clear and convincing" evidence to overcome those findings.

Zeigler also complained of counsel's failure to utilize Vincent Hargrove, a fellow inmate who provided Zeigler with an affidavit confirming the Lear letters.  Zeigler conceded in his brief on appeal that Hargrove was not a known witness at the time of trial and thus failure to use him could not be laid at counsel's feet (Opinion, Supp. State Court Record, ECF No. 23, Ex. 48, PageID 1634).

20

Consideration of Zeigler's Ground Five is barred by his procedural default in presenting it to the Ohio courts and it should be dismissed on that basis.

## Ground Six:  Ineffective Assistance of Trial Counsel at the Suppression Hearing

In his Sixth Ground for Relief, Zeigler claims he received ineffective assistance of trial counsel when his trial attorney failed to call witnesses, his brother and his grandmother, who would have made his motion to suppress successful.

Zeigler also presented this claim for the first time in his delayed petition for post-conviction relief (Supp. State Court Record, ECF No. 23, Ex. 32).  As with Ground Five, the Common Pleas Court summarily rejected this claim for failure to meet the jurisdictional requirements of Ohio Revised Code § 2953.23. *Id.* at Ex. 37.  The First District affirmed on the same basis as with Ground Five.  Here, however, it found Zeigler failed to prove unavoidable presentation of discovery:

> {111} Nor did Zeigler demonstrate that he had been unavoidably prevented from timely discovering the evidence contained in the affidavits provided by his brother and grandmother. Those affidavits essentially corroborated Zeigler's affidavit concerning the substance of his telephone conversations with the affiants after he had been detained by police. And both affiants had been present and poised to testify at the pretrial hearing on Zeigler's motion to suppress the evidence seized during that detention.

(Supp. State Court Record ECF No. 23, Ex. 48, PageID 1634).

The State's procedural default defense to this claim is also well taken.  As noted above, Ohio has a relevant procedural rule, to wit, the statute of limitations on post-conviction petitions. Zeigler failed to meet that rule and it was enforced against him.  The rule is an adequate and independent state basis for decision and Zeigler has shown no excusing cause and prejudice:  he

21

obviously knew of these witnesses and that they had not been called well before trial.

Ground Six should be dismissed as procedurally defaulted.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition as amended be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.

August 15, 2022.

s/ *Michael R. Merz*
United States Magistrate Judge